UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LARRY WATKINS, III,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.
_____

21-CV-535
17-CR-103
DECISION AND ORDER

On November 15, 2019, the petitioner, Larry Watkins, III, pleaded guilty to Counts 1 and 27 of the Third Superseding Indictment, which charged violations of 18 U.S.C. § 1962(d) (racketeering conspiracy) and 18 U.S.C. § 841(a)(1) (possession of cocaine base with intent to distribute), respectively.  Docket Items 404 and 405.[1]  As part of his plea agreement with the government, Watkins agreed that his final offense level was 23 under the United States Sentencing Guidelines ("Guidelines") after including enhancements for possessing a firearm (§ 2D1.1(b)(1)) and maintaining drug premises (§2D1.1(b)(12)).  *See* Docket Item 404 at 5.  He further agreed that given that offense level and his criminal history category of III, the Guidelines would call for a sentence of 57 to 71 months' imprisonment.  *See id.* at 6.  And he agreed to waive his right to appeal or collaterally attack any sentence imposed within or below the Guidelines range.  *Id.* at 8-9.

---

[1] The citations are to the criminal docket, 17-cr-103, and page numbers refer to ECF pagination.

During the plea colloquy, this Court questioned Watkins extensively to ensure that he was proceeding knowingly and voluntarily.  See Docket Item 897.  The Court specifically inquired about Watkins's understanding of the two-level enhancement for possessing a firearm, id. at 35, as well as his understanding "that the uncertainty about [his] sentence or any disappointment [he] may have about the guidelines range will not be a basis to withdraw [his] plea," id. at 37.  The Court also reviewed the appeal waiver and made sure that Watkins understood it.  Id. at 41-42.

At sentencing, the Court calculated Watkins's Guideline range as 57 to 71 months' imprisonment, consistent with the plea agreement.  Docket Item 953 at 40-41.  The Court then gave Watkins a below-Guidelines sentence of 54 months on each count to be served concurrently.  Id. at 50.

On April 21, 2021, Watkins filed a motion to correct his sentence under 28 U.S.C. § 2255.  Docket Item 887. On June 14, 2021, the government responded, Docket Item 900, and on June 28, 2021, Watkins replied, Docket Item 903.  On July 6, 2021, Watkins filed an amended reply, Docket Item 904, and on October 21, 2021, Watkins filed a letter, which was docketed as a motion to appoint counsel, Docket Item 923.  For the reasons that follow, Watkins's motions are denied with the exception of a correction to the Presentence Investigation Report ("PSR"), as noted below.

## DISCUSSION

I.     **MOTION TO APPOINT COUNSEL**

After Watkins's motion was fully briefed, he wrote to the Court "in hopes to obtain appointed counsel on behalf of [his] 2255 motion which is pending."  Docket Item 923.

In particular, Watkins noted that he was requesting counsel "in order to be aware of the proper procedures that [he] must follow and abide by with regards to [his] 2255 motion." *Id.*  He noted that he had "replied to the government's opposition June 22, 2021," but he wondered whether he "improperly submitted [his] response."  *Id.*

Under 28 U.S.C. § 2255 and 18 U.S.C. § 3006(A)(2), "the Court may appoint counsel for a financially eligible § 2255 petitioner when 'the interests of justice so require.'" *Harris v. United States*, No. 6:14-CR-6149 EAW, 2020 WL 4059198, at *2 (W.D.N.Y. July 20, 2020) (quoting 18 U.S.C. § 3006(A)(2)).  Additionally, "Rule 8 of the Rules Governing Section 2255 Cases in the United States District Courts require the appointment of counsel when an evidentiary hearing is warranted."  *Id.*

For the reasons explained below, Watikins does not have a viable claim to correct his sentence.  Therefore, an evidentiary hearing is not required.  *See* 28 U.S.C. § 2255(b) (no hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *Curshen v. United States*, 596 F. App'x 14, 15 (2d Cir. 2015) (summary order) (explaining that "to be entitled to a hearing, a movant must allege a 'plausible or viable' claim").  Nor would the interests of justice be served by appointment of counsel.  *See Harris* 2020 WL 4059198, at *2 (noting that "[t]he likelihood that a movant's or prospective movant's claims have merit is central to the determination whether the interests of justice warrant the appointment of counsel at public expense" (quoting *United States v. El-Hage*, No. S7 98-CR-1023 (LAK), 2016 WL 1178817, at *2 (S.D.N.Y. Mar. 21, 2016))).  Indeed, Watkins correctly followed the Court's filing procedures—which seemed to be his main concern in his letter requesting the appointment of counsel.

For all those reasons, Watkins's motion to appoint counsel is denied.

## II.   MOTION TO CORRECT SENTENCE

Watkins seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). He argues that his counsel was ineffective for (1) "fail[ing] to object to 'Double Counting' of his receiving a [two-]point enhancement under U.S.S.G 2D1.1(b)(1) and criminal history points for the same conduct under 4A1.1(A)"; (2) having "substitute counsel," that is, counsel who had not written and submitted the objections to the PSR, argue those objections at sentencing; and (3) "incorrectly inform[ing] petitioner of a firearm enhancement" and failing to raise certain facts with respect to that enhancement. Docket Item 887 at 7-8. Watkins also notes that the Court "ordered [him] to participate in the residential drug abuse program (RDAP)," but that he was later deemed "ineligible for the 18 U.S.C. 3621(e)(2)(B) reduction due to the courts [sic] firearm in connection with a drug trafficking offense." Docket Item 887 at 8. As a result, Watkins contends that his sentence should be corrected.

### A.   Appeal Waiver

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841

4

F.3d 578, 580 (2d Cir. 2016).  Thus, a defendant who has signed an appeal waiver typically is barred from arguing that his sentence was calculated improperly—so long as the plea was knowing and voluntary.  This is true even if the defendant later becomes aware of new facts or if the law changes in a way that is favorable to the defendant.  *See United States v. Haynes*, 412 F.3d 37, 39 (2d Cir. 2005) ("[A]ppeal waivers are applicable to issues arising subsequent to the plea agreement, including issues created by new judicial decisions."); *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam) ("We have long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into.  The reasons for enforcing waivers of direct appeal in such cases lead us to the same conclusion as to waivers of collateral attack under § 2255.").

Here, Watkins agreed to waive the following rights:

> 17.  The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  *The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment*, a fine and supervised release set forth in Section III, ¶ 9, above, notwithstanding the manner in which the Court determines the sentence.  In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.
>
> 18.  The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

Docket Item 404 at 8-9 (emphasis added).  And this Court explicitly addressed those waivers with Watkins during the plea colloquy.  Docket Item 897 at 41-42.

Watkins now makes various arguments challenging the calculation of his sentence.  Such arguments typically would be barred by the waiver in his plea agreement.  But there is an added wrinkle here:  Watkins also claims that his counsel was ineffective in advising him about his plea and plea agreement.  *See* Docket Item 887 at 7-8.

A defendant who has signed an appeal waiver still may raise an ineffective-assistance-of-counsel claim "challenging 'the constitutionality of the *process* by which he waived [his right to appeal].'"  *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (emphasis and alteration in original) (quoting *United States v. Hernandez,* 242 F.3d 110, 113 (2d Cir. 2001)); *see also United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective assistance of counsel during his plea proceedings").  That is because a claim "challenging the attorney's *advice* about [the defendant's] bargaining position . . . connect[s] the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct."  *Parisi*, 429 F.3d at 139 (emphasis in original).

Because Watkins proceeds *pro se*, the Court must liberally construe his claims. *See Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) ("It is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" (quoting *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996))).  Viewed through this lens, the Court finds

that Watkins's first and third arguments—concerning "double counting" and the two-level firearm enhancement to which he agreed in his plea agreement—could be construed as attacking his counsel's advice to him during the plea-negotiation process. Watkins's second and fourth arguments regarding the objections to the PSR and his eligibility for RDAP, however, fall squarely within his appeal waiver.

### 1. Objections to the PSR

Watkins's second claim is that his counsel did not adequately argue the objections to the PSR at sentencing. But the Guidelines calculations in the PSR were identical to those in the plea agreement, *compare* Docket Item 699 at 31, *with* Docket Item 404 at 6—calculations that Watkins explicitly acknowledged and agreed to in his plea colloquy, Docket Item 897 at 37-38, and that the Court eventually adopted, Docket Item 953 at 40-41. So any alleged deficiencies by his counsel in arguing objections to those calculations after the fact did not affect, and could not have affected, the knowing and voluntary nature of his plea. As a result, this argument is precluded by Watkins's appeal waiver.[2]

---

[2] Moreover, as the government observes, "[d]efense counsel had a difficult tightrope to walk—balancing presenting his client in the most positive light to the Court while not breaching the plea agreement by requesting a sentence outside the agreed upon guidelines." Docket Item 900 at 17. Counsel "navigated this by showing the Court that some factual issues in the PSR were supposedly not as dam[n]ing as they appeared." *Id.* And that approach was successful: the Court ultimately gave Watkins a below-Guidelines sentence even though he was precluded by his plea agreement, *see* Docket Item 404 at 6-7, from requesting such a sentence.

7

2. **Eligibility for RDAP**

Watkins's fourth claim is that the Court "anticipated that [he] would receive one (1) year reduction in his sentence under 18 U.S.C. 3621(e)(2)(B)," but the Bureau of Prisons deemed Watkins ineligible for that "reduction due to the . . . firearm in connection with a drug trafficking offense." Docket Item 887 at 8. Watkins therefore asks this Court to "adjust his presentence report to redact any such information by which [he] might be bar[r]ed or prevented from getting the credit and tie off as reward for successful completion of the RDAP program." *Id.*

To the extent that Watkins takes issue with the two-point enhancement for possession of a firearm or the sentence this Court imposed, that challenge is barred by his appeal waiver. *See Martinez v. United States*, No. 06-CR-312A, 2009 WL 1663985, at *2 (W.D.N.Y. June 15, 2009) (finding in case challenging RDAP ineligibility that "[t]he plea agreement and the transcripts of the plea allocution and sentencing show that petitioner accepted the charges and sentencing factors that formed the basis of his current sentence," and "[t]his Court will not now permit objections that petitioner knowingly and voluntarily waived").

Nor can Watkins sidestep his appeal waiver by arguing that the Court intended that he receive a lower sentence. Unlike the sentence in *United States v. Fraley*, No. CR.A.05 188 KSF, 2007 WL 1876455 (E.D. Ky. June 27, 2007)—on which Watkins relies, *see* Docket Item 887 at 8; Docket Item 904 at 4-5—this Court's sentence was not crafted with the assumption that Watkins would get the RDAP credit. In *Fraley*, the court amended the defendant's PSR after sentencing to remove the defendant's two-point enhancement for possession of a dangerous weapon because "the United States acknowledge[d] that it was the government's intent, as well as the court's intent in

8

sentencing [the defendant], that she be eligible for early release upon completion of the RDAP." 2007 WL 1876455, at *3. Here, by contrast, "[a]lthough this Court did comment briefly at sentencing that it would recommend petitioner for RDAP, the transcript of petitioner's sentencing makes clear that no part of the sentence was conditioned on actual acceptance of petitioner into any programs." *See Martinez,* 2009 WL 1663985, at *2; *see also* Docket Item 953 at 52 ("I'm going to *recommend* that the defendant be enrolled in the RDAP program, the RDAP program, that will give him both drug treatment and the ability to complete that treatment in a way that *might* get him out sooner rather than later." (emphasis added)). In other words, this Court intended the sentence it gave, regardless of whether Watkins would ultimately receive the benefit of a reduction under RDAP.

Therefore, Watkins's argument regarding his eligibility for RDAP lacks merit and is barred by his appeal waiver. The Court will, however, correct the language of the PSR as described below.

### B.     Ineffective Assistance of Counsel Claim

To prove ineffective assistance of counsel, a defendant must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen,* 427 F.3d 164, 167 (2d Cir. 2005) (citations omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 688 (1984)). "In assessing the attorney's performance, [the Court] must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting

9

*Strickland,* 466 U.S. at 690). To establish prejudice, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### 1. "Double Counting"

Watkins first argues that his counsel was ineffective by failing to advise him about the supposed "double counting" of a two-point enhancement for possession of a firearm under U.S.S.G. 2D1.1(b)(a) and the criminal history points he received for the same conduct. As noted above, Watkins agreed to both the enhancement and his criminal history score in his plea agreement, so counsel's failure to advise him that he was agreeing to impermissible double counting could conceivably be ineffective assistance of counsel in the plea negotiations.

As the government notes, however, the Second Circuit has rejected the argument Watkins advances regarding "double counting." *United States v. Campbell*, 967 F.2d 20, 25 (2d Cir. 1992) ("[T]his case involves the unusual instance where a prior act is relevant to determining both the defendant's criminal history category and the offense level for the charged conduct. While this may be double counting in a literal sense, double counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis."). In fact, "prior offenses are appropriately factored into both the offense level and the criminal history category because prior offenses play a separate and distinct role in each category." *United States v. Duran*, 399 F. Supp. 2d 543, 545 (S.D.N.Y. 2005), *aff'd*, 220 F. App'x 7 (2d Cir. 2007). "The offense level 'represents a judgment as to the wrongfulness of the particular act,'" whereas "[t]he criminal history category principally estimates the 'likelihood of recidivism.'" *Id.* at 545

(quoting *Campbell,* 967 F.2d at 25; *U.S. Sentencing Guidelines Manual,* Chapter 4, Introductory Commentary (2004)).

In light of *Campbell*, Watkins's counsel was not ineffective for failing to advise Watkins that the two-level enhancement was inappropriate "double counting" for the simple reason that it was not.

### 2. Firearm Enhancement

Watkins next asserts that his "counsel incorrectly informed [him] of a firearm enhancement by "stat[ing] the firearm enhancement was from a previous 2014 conviction" rather than being for "a firearm used in the commis[sion] of a drug trafficking offense." Docket Item 887 at 7. Once again, the relevant inquiry is whether counsel's alleged ineffective assistance rendered Watkins's plea not knowing and voluntary.

Watkins's plea agreement stated that he agreed that Guidelines § "2D1.1(b)(1) (possession of a firearm)" applied. Docket Item 404 at 5. That section states that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1). Under the "Firearms" section of the factual basis, Watkins admitted that during the time of the charged conspiracy, "[o]n January 11, 2014, Buffalo Police Officers were on patrol on Stanton Street and observed [Watkins] with another person," after which Watkins "ran down the street with his hand on the handle of a gun" and "threw the firearm over the fence of a house on Stanton Street." *Id.* at 4. He also admitted that "[o]fficers recovered a loaded Rossi Model M88, 38 special revolver, bearing serial number W357412." *Id.*

During Watkins's plea colloquy, the Court asked Watkins,

> Do you understand that the conduct that is going to be used to compute your guidelines range will include not only the

11

> conduct that you ple[a]d guilty to, but also what is called relevant conduct that may involve counts that are dismissed or that were never charged in the first pla[ce]. So, for example, do you understand that while you are not pleading guilty to possessing a firearm or maintaining a drug involved premises, you are agreeing that a two[-]level increase in your offense level is appropriate because you possessed a firearm, and another two level increase is appropriate because you maintained a premises for the purpose of manufacturing or distributing controlled substances, do you understand that?

Docket Item 897 at 35. Watkins responded: "Yes." *Id.* at 36.

The Court further addressed this issue in detail at sentencing after Watkins asked, "why do I still have the points for [the possession of a firearm in furtherance of drug-trafficking] charge, and I'm no longer charged with this?" Docket Item 953 at 13. The Court explained:

> THE COURT: Okay. Well, when you pled guilty, I explained to you that not only were you -- the relevant conduct that's used to compute your guidelines range includes not only the relevant conduct that you plead guilty to, but also relevant conduct that involved counts that are dismissed or never charged in the first place. Do you remember, we discussed that? And this, possession of a firearm, is something that you actually agreed to in your plea agreement. You and the government agreed that in paragraph 6 of the plea agreement that we went over, you and the government agreed that there would be a two-level increase for possession of a firearm. And as I understand it, the possession of a firearm doesn't even have to be your own possession. You admit that you possessed a firearm in the plea agreement, but I -- as I understand it, for guideline purposes, the possession of a firearm doesn't even have to be your own possession. It can be possession of a firearm in connection with the conspiracy. Do I have that right, Ms. Blackman?
>
> USPO BLACKMAN: That's right, Your Honor.
>
> THE COURT: Okay. So that's why, Mr. Watkins. It's something that you agreed to in the plea agreement, something that you admitted in the plea agreement. In fact, in the plea agreement in paragraph 4D, you admitted that you

12

>ran down the street with your hand on a handle of a gun, and that the officers recovered a .38 Special revolver Rossi model M 88.  That was explicitly in the plea agreement, that was something you agreed to.  So the fact that the count is dismissed doesn't matter.  You admitted that conduct, and you accepted responsibility for that conduct.  And . . . so, it is relevant conduct in connection with the offense.  That's why.  That's how that works.  So, even if the count is dismissed, [if it is] relevant conduct in connection with the crime, you're still responsible for it.

*Id.* at 13-14.  Watkins responded,

>I understood that I received a two-point enhancement for possession of a firearm, I acknowledged, I thought it was just the possession of a firearm which gave me the two-point enhancement.  I just thought that maybe it should be the two-point enhancement for the firearm and not possessing a firearm in furtherance of drug trafficking, it was just a -- merely a simple possession of a firearm.
>
>So that's why I believe that maybe I do deserve 2 points, but not as significant for what I got 2 points for, which would be in furtherance of drug trafficking, instead it should just be possession of a firearm, which I do not deny, sir.  I understand I get the 2 points for that. I don't think it should be for possession of a firearm in furtherance of a drug trafficking crime.  That's not the case, Your Honor.

Docket Item 953 at 15.  The Court explained,

>So the two-level enhancement applies if a firearm is possessed as relevant conduct in connection with the offense.  You're telling me you possessed it, and you pled to it in the plea agreement, possessing it as part of this conspiracy. So [if] you possessed the firearm in connection with the conspiracy, it counts as relevant conduct.

*Id.* at 16.  The government then confirmed that for the two-point enhancement for possession of a firearm to apply, the firearm must "be possessed as the relevant conduct in connection with the offense," but "[n]ot necessarily used for the purpose" of the offense.  *Id.*

13

Watkins clarified, "I'm obviously not denying the fact that I possessed a firearm. It's hard to deny the fact when I already received a felony for this firearm that I admitted was mine to city court or state court." *Id.* at 18. After some further discussion, the Court stated: "[I]t sounds to me like you're not denying that you possessed a firearm, and that that is relevant conduct in connection with the charges that you pled guilty to. Therefore -- do you agree that?" *Id.* at 19. Watkins responded: "*Yes, I'm not denying the 2 points*, sir, at all." *Id.* (emphasis added).

Even assuming for the sake of argument that counsel did not adequately advise Watkins regarding the requirements for the enhancement, it is hard to see how Watkins can claim any prejudice. During his plea colloquy, Watkins confirmed under oath that he understood that although he was not pleading guilty to possession of a firearm in connection with the charged conspiracy, he was agreeing to a two-point increase for possessing a firearm as relevant conduct. Therefore, even if his counsel did not explain the enhancement to Watkins, the Court did—prior to his pleading guilty. Moreover, at sentencing, Watkins acknowledged that he had possessed a firearm as conduct relevant to the offense and did not dispute the two-point increase.

It seems that Watkins's real disagreement is not with the two-level increase itself for possession of a firearm as relevant conduct but instead with the PSR's description of that increase as being for "possess[ion of] firearms in connection with his drug-trafficking." Docket Item 567 at 54. Watkins agreed that he possessed a firearm and that his possession of a firearm constituted relevant conduct. *See* Docket Item 494 at 5; Docket Item 895 at 35-36; Docket Item 953 at 19. And so he is not entitled to relief from

14

his sentence because the Guideline calculation was both correct and exactly what he agreed to.

But it was the understanding of the probation officer and the Court that the possession of a firearm that resulted in a two-level enhancement was relevant to the conspiracy charge and could even have been the conduct of a co-conspirator. *See* Docket Item 953 at 13 ("The Court: . . . 'as I understand it, for guideline purposes, the possession of a firearm doesn't even have to be your own possession. It can be possession of a firearm in connection with the conspiracy. Do I have that right, Ms. Blackman?' USPO BLACKMAN: 'That's right, Your Honor.'"). What is more, the drug possession charge to which Watkins pleaded guilty involved conduct in April 2018, *see* Docket Item 404 at 4-5, while the relevant firearm conduct occurred in 2014, *see id.* at 4.

So the Court corrects the language of the PSR as follows: the sentence stating that"[a] two (2) level upward adjustment applies pursuant to § 2D1.1(b)(1) as the defendant possessed firearms in connection with his drug trafficking," Docket Item 699 at 24, shall be amended to read that "[a] two (2) level upward adjustment applies pursuant to § 2D1.1(b)(1) as the defendant possessed a firearm as relevant conduct in connection with the offenses to which he pleaded guilty." *See* Fed. R. Crim. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.").[3] The Court does not know whether that

---

[3] Should the government have an objection to the Court's correction of the PSR under Rule 36, it may move for reconsideration.

correction will have any effect on Watkins's eligibility for RDAP, and it does not intend that it will or will not have any effect. The Court simply intends to clarify what it understood at the time of sentencing to be the relevant conduct that resulted in Watkins's Guidelines calculation.

\* \* \*

For all those reasons, Watkins has not shown that "he received constitutionally ineffective assistance of counsel during his plea proceedings." *See Lloyd*, 901 F.3d at 124. His motion is therefore denied except for clarification of the PSR as noted above.

## CONCLUSION

For the reasons set forth above, the PSR is corrected as noted above, but Watkins's motions to correct his sentence under 28 U.S.C. § 2255, Docket Item 887, and for appointment of counsel, Docket Item 923, are otherwise DENIED. His petition in W.D.N.Y. Docket No. 21-cv-535 is DISMISSED, and the Clerk of Court shall close that case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438 (1962).

Watkins must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

DATED: May 19, 2022
Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE